IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JACK E. THORNTON                    §
TDCJ #752002,                        §
          Plaintiff,       §
                                    §
v.                                   §          CIVIL ACTION NO. H-10-0616
                                    §
TERRILYNN L. MERCHANT, *et al*.,     §
                                    §
          Defendants.      §

## MEMORANDUM AND ORDER
## OF PARTIAL DISMISSAL

The plaintiff, Jack E. Thornton (TDCJ #752002), is a state inmate in custody of the

Texas Department of Criminal Justice – Correctional Institutions Division (collectively,

"TDCJ").   Thornton has filed a lengthy complaint under 42 U.S.C. § 1983, alleging

violations of his civil rights [Doc. # 7].  Thornton, who appears *pro se* and *in forma pauperis*,

has also filed a motion to bring criminal charges against the defendants in connection with

his claims [Doc. # 11].   After reviewing all of the pleadings as required by 28 U.S.C.

§ 1915A, the Court concludes that Thornton's motion must be denied and his complaint must

be dismissed, in part, for reasons that follow.

## I.     BACKGROUND

Thornton is presently incarcerated at the Wynne Unit in Huntsville, Texas.  Thornton

sues two correctional officers at the Wynne Unit facility:  Officer Terrilynn Merchant, who

works as a "craft shop supervisor," and Officer Cheryl Straughter, who is also assigned to

one of the facility's craft shops.  Thornton also sues two inmates who are incarcerated at the

Wynne Unit: Rodney Blakey (TDCJ #473072) and Harold Burkett (TDCJ #539551).   In addition, Thornton sues the following supervisory officials employed by TDCJ at the Wynne Unit:   Senior Warden Vernon K. Pittman; Major Andre E. Watson; Captain Bruce D. Baggett; Assistant Warden Thomas M. Pierce; Assistant Warden Tony R. O'Hare; Senior Warden Kelly Strong; Major Richard D. Langley; Lieutenant Lonnie G. Douglas; Grievance Investigator Tyra Phillips; and Law Librarian Robert H. Quada.   Thornton also sues the following administrative officials employed by TDCJ in Huntsville or Austin:   TDCJ Director Rick Thaler; Grievance Administrator Keith Clendennen; Grievance Administrator V.L. Brisher; Regional Administrator Kevin Mayfield; Texas Board of Criminal Justice Chairman Oliver Bell; TDCJ Executive Director Brad Livingston; and TDCJ Inspector General John Moriarty.

In this case, Thornton complains that the defendants have participated in a conspiracy to violate his civil rights by charging him with a false disciplinary case, revoking his craft shop privileges, and then wrongfully disposing of the personal property that he used in doing craft projects.   The current complaint, which is summarized briefly below, consists of 25 pages of single-spaced text and over 100 pages of exhibits.   [Doc. # 7].   The pleadings and exhibits document the following chronology of the events giving rise to Thornton's claims.

### A.      Chronology of Events

All of Thornton's claims stem from a disciplinary case that was lodged against him in May of 2008.   At that time, Thornton was assigned to a particular area of the Wynne Unit which allowed him to work in the craft shop.   An avid woodworker, Thornton frequently sold

his wares to correctional officers. In doing so, Thornton was able to purchase many of his own materials and he also acquired a substantial number of woodworking tools.

Thornton's craft shop privileges ended on or about May 6, 2008, when the craft shop supervisor (Officer Merchant) filed disciplinary charges against Thornton, accusing him of violating prison rules by engaging in deception in connection with his woodworking activities. In particular, Thornton was charged in case #2008245407 with falsely representing that he was a craft shop supervisor at TDCJ for the purpose of obtaining a special discount from an approved vendor.

On May 14, 2008, Thornton appeared for a disciplinary hearing in case #2008245407. During the investigation, Thornton admitted to Officer Merchant's immediate supervisor (Major Andre Watson) that he sent a letter to an approved vendor (Rockler Woodworking & Hardware) in which he held himself out as a "professional woodworker" to obtain a special discount from the company. Thornton insisted that, because he sold his goods to correctional officers, he was a professional and he believed he was entitled to this discount. Thornton denied, however, that he ever told the company that he was a craft shop supervisor. After considering the charging officer's testimony and written report, the disciplinary hearing officer (Captain Baggett) found Thornton guilty of engaging in deception. As punishment, Thornton was restricted to his cell for 30 days and his commissary privileges were curtailed during that time. Thornton's punishment also included 8 days of solitary confinement that he had already served in pre-hearing detention.

Thornton objected that officials did not produce the original letter that he wrote to the vendor and that the conviction was based solely on Officer Merchant's speculation that he had represented himself as a TDCJ supervisor to obtain a discount.  Thornton, who insisted that the charges against him were "false," challenged the disciplinary conviction by filing a Step 1 grievance.  In response to that grievance, the reviewing official (Warden Kelly Strong) observed that, although the private vendor at issue affords a discount to TDCJ craft shop supervisors, that company "does not give offender discounts on any of their products." [Doc. # 7, Ex. 2, Step 1 Grievance #2008147400].  Because Thornton obtained a discount that he was not entitled to receive, the reviewing official concluded that there was sufficient evidence to uphold the guilty verdict and the punishment.  Thornton filed a Step 2 grievance to challenge this decision, but an administrative official (V.L. Brisher) agreed that the conviction was appropriate and supported by a preponderance of the evidence.  [Doc. # 7, Ex. 2, Step 2 Grievance #2008147400].

Shortly after the disciplinary conviction was entered in case #2008245407, Thornton was re-assigned to a different area of the prison by the Unit Classification Committee and his craft shop privileges were also revoked.  Thornton complains that, after he lost his craft shop privileges, Officer Merchant "allowed her two favored 'unit artist' inmates [Rodney Blakey and Harold Burkett] to pack and inventory [Thornton's] craft shop property."  Thornton alleges that Blakey and Burkett had been giving him trouble for some time and

were trying to get him kicked out of the craft shop.[1]  Thornton contends that, because Officer

Merchant failed to supervise Blakey and Burkett, in violation of TDCJ rules and regulations,

these inmates stole many of his tools and materials.  Thornton insists that Officer Merchant

is "criminally responsible" for "the theft, misuse, and conversion of [the] missing tools [and]

materials" because she denied the alleged failure to supervise in an attempt to cover-up the

theft. Thornton reasons, therefore, that she conspired with the inmates to take his property

for their own use.

On May 29, 2008, Thornton sent an official request (an "I-60") to Major Watson,

accusing Officer Merchant of misconduct in connection with the handling of his property.

[Doc. # 7, Ex. 3].  According to Thornton, Major Watson told him to put any complaints that

he had about Officer Merchant into writing.  After the meeting with Major Watson, Thornton

received a written notice from Officer Merchant on June 2, 2008, informing him that he had

60 days to make provisions for the disposition of his craft shop property. [Doc. # 7, Ex. 4].

According to this notice, Thornton had the option of giving these items of property to an

approved visitor or mailing these items to someone on his approved visitor list.  Thornton did

not make plans to dispose of his property as instructed.  Instead, on June 10, 2008, Thornton

sent a detailed letter to Major Watson, accusing Officer Merchant with misconduct, among

---

[1]     Thornton states that, in 2007, Blakey and Burkett manufactured false disciplinary charges
against him regarding some "minor contraband."  Thornton alleges further that, in February
of 2008, Blakey and Burkett attacked him in a "wood storage closet" and choked him until
he was unconscious.  Thornton claims, however, that Officer Merchant refused to do
anything about the mistreatment because these inmates were her favorites.

other things, by failing to supervise the inmates who packed up his craft shop tools and materials. [Doc. # 7, Ex. 5].

On June 27, 2008, Thornton sent an I-60 to Officer Merchant in response to the notice that she sent about the disposition of his property.  [Doc. # 7, Ex. 6].  Thornton stated that he did not want to have his property sent away from the unit because he intended to "get back on the [l]ist" of inmates approved for craft shop privileges within the next six months. Referencing Administrative Directive 14.59 ["AD 14-59"], Thornton also disputed that the prison policy which governs the sale of crafts by inmates required him to dispose of his property after the revocation of his privileges.[2]

On June 30, 2008, Officer Merchant sent Thornton another notice regarding the disposition of his craft shop property. [Doc. # 7, Ex. 6].  In response to Thornton's I-60, Officer Merchant explained that disposition of the property at issue was not governed by the craft shop policy found in AD 14.59.   The disposition was instead governed by Administrative Directive 03.72 ["AD 03.72"], which contained procedures for disposing of or destroying an inmate's excess personal property.  Noting that Thornton continued to challenge the validity of his disciplinary proceeding, Officer Merchant advised further that Thornton did not need to make a decision about the disposal of his property until his appeal

---

[2]     Thornton notes that, pursuant to AD 14.59, an offender whose craft shop privileges have been revoked or suspended is eligible to re-apply for a "piddling card," or to be placed on a waiting list for such a card, six months after the administrative revocation or suspension of those privileges. Thornton has provided a typewritten copy of AD 14.59, which includes certain guidelines for participation in the prison craft shop. [Doc. # 7, Ex. 7].  The copy does not appear to be official, but the Court presumes for the purpose of this Memorandum that Thornton's rendering of the policy is accurate.

from the disciplinary conviction was resolved.  Officer Merchant also informed Thornton that, if he wished to take an inventory of his property to determine whether items were missing, he should contact Major Watson.

On July 31, 2008, Thornton filed a lawsuit against Officer Merchant, Captain Baggett, Warden Strong, and an unnamed employee of the Rockler Woodworking & Hardware Company.  *See Thornton v. Merchant, et al.*, Civil No. H-08-2386 (S.D. Tex.).  Thornton accused Officer Merchant of filing a false disciplinary case against him that resulted in "loss of privileges, loss of liberty, income, and personal property."  Thornton complained that the conviction and the punishment violated his constitutional rights and that he should not have been kicked out of the craft shop.  The district court dismissed the complaint as frivolous on September 30, 2008.[3]

On February 12, 2009, Thornton received an "administrative lay-in" regarding the disposition of his craft shop property, which remained in storage.  [Doc. # 7, Ex. 9].  Officer Merchant advised Thornton that he had 30 days to make a decision about the disposition of his property and asked him to sign a notice to that effect.  Thornton refused, noting that he was already back on the waiting list for craft shop privileges.  He then filed a grievance on February 23, 2009, arguing that the property disposition policy referenced by Officer Merchant (AD 03.72), did not apply.  [Doc. # 7, Ex. 9].  He also demanded to conduct an

---

[3]     The United States Court of Appeals for the Fifth Circuit affirmed that decision and found that Thornton's appeal was frivolous.  *See Thornton v. Merchant, et al.*, No. 08-20768 (5th Cir. July 10, 2009).

inventory of his own property.  In response to that grievance, Warden Pierce determined that Officer Merchant's instructions were proper and that Thornton needed to make disposition of his property at this time.  Thornton filed a Step 2 grievance to appeal, but Assistant Regional Director Kevin Mayfield agreed that the policy required him to make disposition of his property within 60 days after his removal from the craft shop.  [Doc. # 7, Ex. 9].

On July 1, 2009, Thornton sent a letter to Senior Warden Pittman about his plight. [Doc. # 7, Ex. 11].  Thornton detailed his belief that the disciplinary charges lodged by Officer Merchant were false.  Thornton complained further that he had been instructed, wrongly in his opinion, to make arrangements to send his craft shop property home. Thornton acknowledged that he was on the "waiting list" for craft shop privileges and that he had been informed the list was "long."  Thornton insisted, therefore, that it was "unfair" to make him send his craft shop property away from the unit when he had re-applied for craft shop privileges.  Thornton repeated his belief that, based on information that he had received from other inmates, some of his property and materials had been stolen and were being used by Blakey and Burkett.

On August 3, 2009, Warden Pittman sent a memorandum to Thornton in response to his letter. [Doc. # 7, Ex. 12].  Warden Pittman reported that he had a "lengthy discussion" with Officer Merchant about his situation.  Warden Pittman repeated that, pursuant to prison policy, Thornton's property could be stored for only 60 days after the revocation of craft shop privileges and could not be kept indefinitely at the Wynne Unit.  Warden Pittman informed Thornton that he needed to make a decision to either mail the property home or

8

"designate someone to pick it up from the property room."  Warden Pittman told Thornton to let Officer Merchant know his decision by August 6, 2009, giving him additional days to decide.  Warden Pittman cautioned Thornton to make arrangements immediately because he was certain that Thornton did not want to lose the property.

Thornton did not heed Warden Pittman's advice by making arrangements to dispose of his property.  Instead, on August 6, 2009, Thornton filed an I-60 request to Major Langley, who was now "in charge" of the Wynne Unit craft shops. [Doc. # 7, Ex. 13].  Thornton complained that Officer Merchant was harassing him about making a disposition of his property.  Thornton also appealed to Major Langley to allow him to conduct a personal inventory of his property to determine which items had been stolen by other inmates.

Thereafter, on September 3, 2009, a personal friend of Thornton's, identified as Walter Whitfield, wrote to Director Rick Thaler.  [Doc. # 7, Ex. 14]. Whitfield's letter detailed the disciplinary conviction and revocation of Thornton's craft shop privileges.  The letter also complained that Officer Merchant allowed other inmates to steal Thornton's property and materials.  According to Thornton, Director Thaler did not respond to the letter.

Thornton's property remained in limbo for a few months while he continued to request an opportunity to conduct his own inventory.  On December 15, 2009, Thornton was allowed to personally inventory the property that was in storage.  Thornton noted that some of the tools and materials were missing.  Thereafter, on December 19, 2009, Officer Merchant and Officer Cheryl Straughter reportedly conducted a search of the "C-Craft Shop" and recovered a box that contained the missing tools.  Thornton noticed, however, that the recovered tools

were used and were not in good condition.   Nevertheless, Officer Merchant and Major
Watson considered the matter resolved, as did Warden Pittman.   In a memorandum, dated
December 28, 2009, Warden Pittman advised Thornton that the only item that officially
remained missing was a "caulking gun valued at $1.99."   Warden Pittman offered to
reimburse Thornton for this missing item.   Observing that Thornton had been notified about
the need to dispose of his property at least 3 times since his disciplinary conviction in May
of 2008, Warden Pittman also admonished Thornton to make "immediate arrangements."

Thornton did not follow Warden Pittman's advice and he did not make prompt
arrangements for his property.   Instead, Thornton filed additional grievances complaining
that his tools had been stolen and used by other inmates. [Doc. # 7, Ex. 19]. Thornton also
wrote a letter to the Federal Bureau of Investigation and a local congresswoman detailing the
theft of his property by Officer Merchant and other inmates in the craft shop. [Doc. # 7, Exs.
22, 23].   Thornton explained that, although Officer Merchant and Officer Straughter
supposedly recovered his missing property from a random box in the craft shop, the tools
were not in their original condition and the inventory identification numbers, which were
evidently required to be on all items of personal property, had been removed and "re-
engraved."   Thornton noted further that the "suspects" had even misspelled his last name
("Thorton") on the tools.

On January 2, 2010, Thornton sent another letter to Warden Pittman. [Doc. # 7, Ex.
24].  In this letter, Thornton complained that Officer Merchant had lied about recovering his
property from a box in the craft shop and was "trying to cover-up the theft (albeit recovery)

10

of some of [Thornton's] craft shop tools/materials." Thornton advised Warden Pittman that his family had contacted "the proper authorities" and requested a "real criminal investigation" of the theft. Thornton also complained that Officer Merchant was manipulating the waiting list and moving other inmates ahead of him in order to keep him out of the craft shop. Shortly thereafter, on January 4, 2010, Thornton filed a Step 1 grievance regarding his allegation that Officer Merchant had lied about recovering his stolen tools. [Doc. # 7, Ex. 25]. Thornton repeated his claims that the tools had been found in an altered condition and that they obviously had been used by other inmates. Thornton demanded that officials continue to store his craft shop property until his privileges were reinstated. In a response dated February 3, 2010, Warden Pierce noted that the issues raised by Thornton had been addressed previously and that no further action was warranted.

On February 17, 2010, Thornton prepared an affidavit accusing Merchant and the two inmates (Blakey and Burkett) of committing theft in violation of the Texas Penal Code. He also accused these defendants of official oppression and intimidation in connection with the theft of his craft shop property. In that respect, Thornton accused Officer Merchant of orchestrating a criminal conspiracy to deflect responsibility for the theft. He sent the affidavit, along with a request for criminal charges, to officials in Walker County, the United States Department of Justice - Civil Rights Division, and to the United States District Court for the Southern District of Texas.[4] [Doc. # 7, Exs. 26, 27].

---

[4]     The request for criminal charges was filed originally as a civil rights complaint in this case
(continued...)

In the meantime, Officer Straughter prepared a lengthy written inventory of Thornton's craft shop property, which would be destroyed if Thornton failed to make appropriate arrangements as directed. [Doc. # 7, Ex. 31]. On March 1, 2010, the items of property were destroyed, pursuant to AD 03.72, after Thornton failed to make arrangements for the disposition of that property. Thornton filed additional grievances regarding the destruction, and the failure of prison officials to conduct an adequate investigation of the theft. Eventually, he filed the pending complaint seeking to hold all of the defendants responsible under 42 U.S.C. § 1983.

### B.    Thornton's Civil Rights Complaint

In the current version of his complaint, which is dated May 20, 2010, Thornton claims that Officer Merchant has violated his civil rights under 42 U.S.C. § 1983 by filing false disciplinary charges against him. [Doc. # 7, *Plaintiff's First Original Complaint*].[5]  By allowing the disciplinary case to proceed, Thornton accuses Major Watson of breaching a duty to protect Thornton's right to due process. In that respect, Thornton complains that

---

[4](...continued)
    [Doc. # 1]. The complaint was dismissed without prejudice as improvidently filed because Thornton did not invoke 42 U.S.C. § 1983 or use a standard form and, therefore, it was not clear that he intended to pursue a civil action in federal court [Doc. # 4]. Thereafter, the Court reinstated this case at Thornton's request after he submitted his claims in the form of a civil rights complaint under 42 U.S.C. § 1983 [Docs. # 6, # 7, # 8].

[5]    Thornton has filed a civil rights complaint using an approved form. All of his allegations, however, and the list of defendants, are found in a typed document styled *Plaintiff's First Original Complaint*, which is attached to the form. Both of these instruments were docketed together [Doc. # 7]. For the purpose of discussing Thornton's allegations, the Court references only the document styled *Plaintiff's First Original Complaint*.

Captain Baggett violated his constitutional rights by finding him guilty of the charged offense when there was insufficient evidence to establish his guilt. Thornton complains further that Warden Strong erred by upholding the conviction during the grievance process and that the resulting change of classification and revocation of his craft shop privileges also constituted a violation of his civil rights.

Thornton claims further that Officer Merchant is responsible for the theft of his property because she allowed other inmates to steal his tools after Thornton's craft shop privileges were revoked. Thornton alleges that Officer Merchant then attempted to cover-up the theft by forcing him to dispose of his property. Thornton accuses Officer Slaughter of falsifying records and Warden Pittman of failing to conduct a proper investigation as part of the conspiracy to cover-up the theft. Thornton claims further that Officer Merchant retaliated against him by manipulating the waiting list for craft shop privileges by moving other inmates ahead of him. Thornton contends that the delay in reinstating his craft shop privileges contributed to the destruction of his property.

Thornton contends that he complained about Officer Merchant to Major Langley, Warden Pittman, Captain Baggett, and "Access to Courts" Supervisor Robert Quada, but that these officials did nothing to help. Thornton also claims that Director Thaler failed to initiate an investigation after receiving the letter from his friend, Walter Whitfield. Thornton complains that the following officials failed to conduct an adequate investigation of his grievances about his disciplinary conviction, the theft of his property, and the alleged misconduct by Merchant: Lieutenant Lonnie Douglas, Grievance Investigator Tyra Phillips,

Director Keith Clendennen, Grievance Administrator V.L. Brisher, and Regional Assistant Administrator Kevin Mayfield.  Thornton contends that Executive Director Brad Livingston and members of the Texas Board of Criminal Justice have failed to ensure due process in the revocation and suspension of privileges.  Thornton alleges further that, when Walker County officials contacted him about the theft, John Moriarty of the TDCJ Office of Inspector General refused to conduct an investigation or stop the destruction of his property.

The complaint includes a recital or "Statement of Claims," which allege that the defendants have violated various constitutional rights, namely, the First, Fifth, Eighth, and Fourteenth Amendments.  [Doc. # 7, *Plaintiff's First Original Complaint*, ¶¶ 57-62]. Thornton claims further that the defendants have violated state and federal criminal laws. Thornton seeks damages under 42 U.S.C. § 1985 "for injury to his person or property" as the result of the defendants conspiracy to violate his civil rights.  Thornton also seeks damages for the defendants' failure to prevent the wrongs alleged.  Invoking 42 U.S.C. §§ 1981, 1983, and 1985, Thornton seeks damages and unspecified equitable relief for the deprivation of his civil rights.  In that respect, Thornton requests $3,000.00 in compensatory damages for his "stolen" property.  Thornton requests lost profits in the amount of "[$2,000.00] a year" starting from the date he was removed from the craft shop on May 6, 2008.  Thornton requests punitive damages in the amount of $10,000.00 from each defendant.  Thornton has also filed a motion asking the Court to lodge criminal charges against all of the defendants for engaging in a conspiracy to destroy his personal property in violation of his civil rights

14

[Doc. # 11].  Thornton's motion will be denied and, with the exception of certain claims against Officer Merchant, his complaint will be dismissed for reasons discussed below.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact."  *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless

legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (citations and internal quotation marks omitted).  A complaint lacks an arguable basis in fact when the plaintiff's allegations are so "fanciful," "fantastic," and "delusional" as to be "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 328 (1989)).

A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citation omitted)).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Of course, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle*[ *v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

III.   **DISCUSSION**

    A.    **Thornton's Recital of Claims**

As outlined above, Thornton has made a litany of allegations, which he then distills into a recitation of discrete "counts." [Doc. # 7, *Plaintiff's First Original Complaint*, ¶¶ 57-62]. Those counts include the following statements: (1) all of the defendants have engaged in a "conspiracy" to deprive him of his right "to enjoy craft shop privileges"; (2) some of the defendants (Merchant, Watson, Pittman, Straughter, O'Hare, Pierce, Clendennen, Thaler, Brisher, Mayfield, Douglas, Phillips, and Moriarty) "failed to protect" his craft shop property from "malicious and intentional destruction" while he was pursuing litigation and, in doing so, deprived him of his right to pursue claims of theft in court; (3) some of the defendants (Strong, Brisher, Pierce, Mayfield, O'Hare, Phillips, and Clendennen) conducted an inadequate investigation of his grievances; (4) Officer Merchant, along with Major Watson and Warden Strong, wrote a "false disciplinary report" against him and gave "false testimony" that resulted in the loss of his craft shop privileges and his classification; (5) some of the defendants (Merchant Watson, Slaughter, Pierce, O'Hare, Pittman, Moriarty, Langley, and Clendennen) failed to investigate his claims of theft or engaged in a "cover-up" by failing to preserve the remaining items of his craft shop property from destruction; and (6) some of the defendants (Merchant, Watson, Slaughter, and Pittman) failed to adequately supervise, inventory, and care for his craft shop property in violation of prison policies as well as state and federal criminal law.

Because of the overlapping nature of Thornton's allegations, the claims cannot be addressed in the precise manner in which they are outlined in the complaint.  Although *pro se* pleadings are entitled to a liberal construction, the Fifth Circuit has repeatedly instructed district courts "to determine the true nature of a pleading by its substance, not its label." *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005); *see also Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co*., 320 F.2d 594, 606 (5th Cir. 1963)).  The Supreme Court has also advised that, notwithstanding the liberal standard that guides the review of *pro se* submissions, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  After a liberal reading of the complaint, the exhibits, and the applicable law, the Court has organized Thornton's claims for discussion according to the substance of his allegations, which are discussed in more detail below.

**B.  Claims Concerning the Disciplinary Conviction; the Change in Classification; and the Loss of Craft Shop Privileges**

Thornton complains that Officer Merchant filed a false disciplinary charge against him in case #20080245407 and that he was denied due process during the disciplinary hearing before Captain Baggett.  Thornton contends that, as a result of this false disciplinary

conviction, Warden Strong violated his rights during the classification process by transferring him from the outside trusty camp to a different area inside the prison and revoking his craft shop privileges.  These claims must be dismissed as duplicative and malicious because they were raised and rejected previously in another case filed by Thornton in this district.

In *Thornton v. Merchant, et al.*, Civil No. H-08-2386 (S.D. Tex.), Thornton sued Officer Merchant, Captain Baggett, Warden Strong, and others, for the loss of his craft shop privileges and his classification because of the "false" disciplinary conviction in case #20080245407.  The district court addressed these allegations on the merits and dismissed the complaint with prejudice as frivolous. In particular, the district court found that Thornton's allegations did not implicate a constitutionally protected right or an actionable claim under 42 U.S.C. § 1983.  The United States Court of Appeals for the Fifth Circuit agreed and affirmed the dismissal, finding that the appeal was also frivolous.  *See Thornton v. Merchant, et al.*, No. 08-20768 (5th Cir. July 10, 2009).

A complaint is considered "malicious" for purposes of the PLRA if it duplicates allegations made in another pending federal lawsuit by the same plaintiff.  *See Pittman v. Moore*, 980 F.2d 994, 994 (5th Cir. 1993) (per curiam).  Because Thornton's claims concerning his disciplinary case mimic those raised in another civil rights case brought by him within this district, maintenance of the instant action would be redundant and an impermissible waste of judicial resources.  *See Mayfield v. Collins*, 918 F.2d 560, 561-62 (5th Cir. 1990).  Therefore, the Court concludes that these claims are subject to dismissal as

malicious under 28 U.S.C. § 1915(e)(2)(B)(i).  *See, e.g., Wilson v. Lynaugh*, 878 F.2d 846

(5th Cir. 1989) (duplicative claims may be dismissed *sua sponte* under the PLRA).

### C.    Theft of Property

Thornton claims that, after he was convicted of the disciplinary charges against him

in case #20080245407, Officer Merchant allowed other inmates (Blakey and Burkett) to

steal, misuse, and convert his craft shop property.   He insists that Officer Merchant, and

others by extension, are criminally responsible for this theft and for the wrongful destruction

of his property.   These claims, which assert an unauthorized deprivation of property, are

barred by the *Parratt/Hudson* doctrine.  *See Hudson v. Palmer*, 468 U.S. 517, 534 (1984);

*Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part on other grounds*, *Daniels v.*

*Williams*, 474 U.S. 327 (1986).  According to this doctrine, a negligent, or even intentional,

deprivation of property by state officials that is random and unauthorized does not rise to the

level of a constitutional violation or a cognizable claim under 42 U.S.C. § 1983 if state law

provides an adequate post-deprivation remedy.  *See Hudson*, 468 U.S. at 533-34; *see also*

*Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (explaining

the *Parratt/Hudson* doctrine).

It is well established that Texas provides a remedy for inmates whose property has

been taken or destroyed in an unauthorized manner.  *See Myers v. Klevenhagen*, 97 F.3d 91,

95 (5th Cir. 1996); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Aguilar v.*

*Chastain*, 923 S.W.2d 740, 743-44 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE

§§ 501.007, 501.008.  Thus, to the extent that Thornton complains that his property was lost,

stolen, or destroyed in an unauthorized manner, this allegation fails to state a claim under 42 U.S.C. § 1983.[6]  *See id.*; *see also Leggett v. Williams*, 277 F. App'x 498, 500, 2008 WL 1984271 (5th Cir. 2008) (holding that the plaintiff's claim that his property was confiscated and destroyed as an act of retaliation for his status as a writ writer was barred by the *Parratt/Hudson* doctrine).  Accordingly, this claim must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### D.       Confiscation of Property Pursuant to Policy

Thornton also complains that his craft shop property was wrongfully confiscated and destroyed pursuant to the prison policy found in AD 03.72 to cover-up the theft or conversion of his tools by other inmates.  As a prison inmate, Thornton has no legally protected interest in the possession of personal property as a general matter.  In that respect, it is well settled that prison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while in prison.  *See McRae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983) (citing *Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980)); *Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990).  To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process.  *See Parratt v. Taylor*, 451 U.S. 527,

---

[6]       A plaintiff seeking relief under 42 U.S.C. § 1983 must establish two elements:  (1) that the conduct complained of was committed by a state actor under color of state law, and (2) that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990).  To the extent that Thornton attempts to include Blakey and Burkett as defendants in this case, these inmates are not "state actors" for purposes of 42 U.S.C. § 1983.  Therefore, Thornton cannot state a valid claim against them under this statute.

537 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). When deprivation of property is occasioned by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Thornton does not complain that he was denied adequate notice before his property was destroyed. The exhibits attached to complaint confirm that Thornton was warned several times that his craft shop property could not remain in storage indefinitely and that he needed to make arrangements for its disposition or that it would be destroyed pursuant to prison policy. As outlined above, Thornton sent more than one letter to Warden Pittman and he filed numerous grievances regarding this issue. The exhibits attached to the complaint show that Thornton's arguments were considered and the policy was explained to him, orally and in writing, multiple times. The exhibits disclose further that Thornton was repeatedly given additional time to make arrangements for his property. Thornton also had opportunities to give his property to his friend or his brother, both of whom were aware of Thornton's complaints, during their visits to the Wynne Unit. The pleadings demonstrate, therefore, that Thornton had an ample notice and opportunity to be heard. Thornton does not otherwise allege facts showing that his property was confiscated in violation of his constitutional right to due process. Accordingly, this claim  must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

E.     **Conspiracy Claims**

Thornton alleges that the defendants violated 42 U.S.C. § 1985(3), which prohibits a conspiracy to deprive an individual of his civil rights. Liberally construed, Thornton

complains that he is entitled to relief under § 1985(3), because the defendants formed an unlawful agreement to deprive him of craft shop privileges and personal property.  To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *See Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).  Thornton does not meet that test here.

According to the pleadings and the exhibits, all of the defendants who allegedly participated in the conspiracy are employed by TDCJ. Government entities and their employees cannot conspire among themselves for purposes of § 1985(3). *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). This is so because a unit of government and its employees are deemed to constitute a single legal entity. *Id*.  Because the individuals identified in the complaint cannot conspire among themselves, Wyatt fails to state a claim for which relief can be granted under 42 U.S.C. § 1985(3).

Alternatively, Thornton's conspiracy claim under 42 U.S.C. § 1985(3) fails for another reason. The Fifth Circuit has held that claims under § 1985(3) are required to allege that the conspiracy was motivated by race or class-based animus.  *See Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. East Texas State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1988); *Hilliard*, 30 F.3d at 652-53.  Prison inmates do not constitute a suspect or protected class for equal protection purposes. *See Carson v. Johnson*,

112 F.3d 818, 821-22 (5th Cir. 1997); *see also Farese v. Scherer*, 342 F.3d 1223, 1229 n. 7 (11th Cir. 2003) (rejecting a prisoner's claim under 42 U.S.C. § 1985(3)). Thornton's complaint does not state that the alleged conspiracy was motivated by race or class-based animus.   Rather, Thornton complains that he was retaliated against because he filed grievances and complaints against Officer Merchant.  This allegation is not sufficient to state a claim for conspiracy under 42 U.S.C. § 1985(3).[7]  Because Thornton does not clearly allege any other viable theory in connection with his request for relief under § 1985, his claim must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### F.    Cruel and Unusual Punishment

Thornton contends that the revocation of his craft shop privileges and the destruction of his personal property has caused extreme stress and mental anguish.  He complains, therefore, that the defendants have violated the prohibition against cruel and unusual punishment found in the Eighth Amendment.  This claim is also without merit.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To demonstrate a violation of the Eighth Amendment in connection with

---

[7]    The Court notes that Thornton also makes a fleeting reference to wrongful discrimination in the enjoyment of craft shop privileges in violation of 42 U.S.C. § 1981.  Thornton does not allege in his complaint that (1) he is a member of a racial minority, or (2) that defendants intentionally discriminated against him because of his race, which are necessary elements to support a claim under 42 U.S.C. § 1981. *See Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).  Accordingly, this allegation also fails to state a claim.

the conditions of his confinement, an inmate must show, as a threshold matter, that the alleged deprivation was "objectively, 'sufficiently serious,'" such that the complained of act or omission has resulted "in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. at 834.  Thornton's allegations concerning his loss of craft shop privileges and personal property fall far short of the showing required.  *See Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (finding an Eighth Amendment violation where inmates were herded into a small outdoor space overnight, deprived of protection from excessive cold, and provided no sanitary means of disposing of their waste).

Likewise, Merchant's claims of emotional or mental anguish are insufficient to establish a valid claim.  Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Absent a showing that the conditions at issue resulted in a physical injury, Merchant cannot recover damages for his emotional distress.  *Alexander v. Tippah County, Miss*., 351 F.3d 626, 631 (5th Cir. 2003); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).  Accordingly, these claims must be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B).

### G.    Inadequate Investigation of Grievances

Thornton argues that the defendants violated his rights under the Due Process Clause by failing to adequately investigate his allegations of theft and misconduct by Officer

Merchant during the grievance process.[8]  Prisoners are entitled to rights under the Due Process Clause only when a constitutionally protected liberty interest is involved. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995). It is well established in this circuit that a prison inmate has no constitutionally protected interest "in having grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Because Merchant's claim relies on a "legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Id.*  Therefore, this claim must be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B).

## H. Criminal Charges are Not Available

Alleging that the defendants abused their official positions of authority in connection with the revocation of his craft shop privileges and the destruction of his property, or failed to prevent violations of his civil rights in connection with same, Thornton has filed a motion to lodge a criminal complaint against the defendants in this case [Doc. # 11].  Thornton accuses the defendants of engaging in a conspiracy to deprive him of his civil rights in violation of 18 U.S.C. § 241, tampering with a victim, witness, or informant in connection with an official proceeding in violation of 18 U.S.C. § 1512(b)(2)(B), and retaliating against a victim, witness, or informant in violation of 18 U.S.C. § 1513(b)(2).

---

[8]      Thornton invokes both the Fifth and Fourteenth Amendment.  The Fifth Amendment only applies to violations by a federal actor. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).  Because all of the defendants are state officials, Thornton's allegations are actionable, if at all, under the Fourteenth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (observing that the Fourteenth Amendment applies only to state actors, not federal actors).

Thornton has no standing to sue for violations of criminal law.  In that regard, it is well established that criminal statutes do not provide a basis for liability in a civil action such as this one.  *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit.  They are criminal in nature and provide no civil remedies."); *Gill v. State of Texas*, 153 F. App'x 261, 2005 WL 2868257 (5th Cir. 2005) (unpublished) (same). Likewise, the Texas Penal Code does not create a private right of action. *See Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied); *Spellmon v. Sweeney*, 819 S.W.2d 206, 211 (Tex. App.—Waco 1991, no writ).

To the extent that Thornton seeks to initiate criminal charges against the defendants, there is no constitutional right to have someone criminally prosecuted.  *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  Nor is there a constitutional right to have someone investigated.  Importantly, the decision to charge an individual with criminal violations is not vested within the courts, but is solely within the discretion of the district attorney.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566-67 (10th Cir. 1993) (private citizen has no standing to have lawyer disciplined or criminally charged); *Satler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (neither member of public at large nor victim has right to have another criminally prosecuted).  Accordingly, Thornton's allegation about a conspiracy to violate federal criminal law fails to state an actionable claim upon which relief can be granted under 42 U.S.C. § 1983 and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

## I.     Retaliation

Thornton claims that, as a result of his grievances and complaints of theft, Officer Merchant has retaliated against him by refusing to reinstate his craft shop privileges. Thornton contends that Officer Merchant does not want him to return to the craft shop because he does not get along with Blakey and Burkett, who are her "favorite" inmates. Thornton maintains, therefore, that Officer Merchant has manipulated the waiting list so that other inmates have been granted craft shop privileges ahead of him, thereby delaying or refusing him reinstatement.

It is well established that a prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *See Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To articulate a claim of retaliation, an inmate must allege: (1) the invocation of a specific constitutional right; (2) the defendants' intent to retaliate against him for his exercise of the right; (3) a retaliatory adverse act; and (4) causation. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). A prisoner's personal belief that retaliation must have been the reason for the adverse action is insufficient to state a valid claim under 42 U.S.C. § 1983. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). To demonstrate that a defendant acted with intent to retaliate, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166.

28

As outlined above, Thornton has alleged facts showing that Officer Merchant retaliated against him for filing grievances against her and that, because of his exercise of his right to complain about acts of misconduct, he has suffered a retaliatory adverse act, namely, the continued refusal to reinstate his craft shop privileges.  It appears that craft shop privileges are very desirable and highly sought after.  Once obtained, the privileges are often held by an inmate for long periods.  Assuming that Thornton's allegations are true, the Court cannot conclude that he fails as a matter of law to state a claim of retaliation in the prison context under Fifth Circuit precedent.  *See Woods*, 60 F.3d at 1166; *see also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir.2003) (per curiam) (finding that a cell restriction and loss of commissary privileges for 27 days was a sufficient "retaliatory adverse act"); *but see Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006) (finding that a job transfer is *de minimis* and insufficient to establish a retaliatory adverse act).  Therefore, the Court will retain Thornton's claim that he has suffered a retaliatory adverse act as the result of filing complaints against Officer Merchant and will authorize service of process to obtain an answer from this defendant.  All of Thornton's other claims, however, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for reasons outlined above.

**IV.**     **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1.     The plaintiff's motion to reinstate criminal charges [Doc. # 11] is **DENIED**.

2.     The Court will issue a separate order authorizing service of process for Officer Merchant in connection with the plaintiff's claim that she has refused to reinstate his craft shop privileges in retaliation for his complaints against her.

29

3.      With the exception of the retaliation claim against Officer Merchant, all of the plaintiff's claims are **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B).

**The Clerk is directed to provide a copy of this order to the parties.  The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and (2) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas, on  January 18, 2011.

Nancy F. Atlas
United States District Judge